Of Counsel:
DEELEY KING PANG & VAN ETTEN

DENNIS W. KING  1732
JOHN WINNICKI   7482
1003 Bishop Street, Suite 1550
Honolulu, HI  96813
Telephone No. 533-1751
dwk@dkpvlaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT CIRCUIT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID E. HENRY, M.D., | CASE NO.: _____ |
| Plaintiff, | |
| vs. | COMPLAINT; DEMAND FOR JURY TRIAL |
| THE QUEEN'S MEDICAL CENTER, a Hawaii nonprofit corporation; CASTLE MEDICAL CENTER, a Hawaii nonprofit corporation, ALAN CHEUNG, M.D., KATHLEEN MAH, M.D., LESLIE CHUN, M.D., ROBERT HONG, M.D., ROBERT OHTANI, M.D., MIHAE YU, M.D., | |
| Defendants. | |

## COMPLAINT

Plaintiff, DAVID E. HENRY, M.D., alleges:

1

INTRODUCTION

Plaintiff brings this action against Defendants, THE QUEEN'S MEDICAL CENTER, a Hawaii nonprofit corporation; CASTLE MEDICAL CENTER, a Hawaii nonprofit corporation, ALAN CHEUNG, M.D., KATHLEEN MAH, M.D., LESLIE CHUN, M.D., ROBERT HONG, M.D., and ROBERT OHTANI, M.D., because Plaintiff was terminated from his employment as a physician and surgeon with Defendants as a result of (1) Defendants' pattern and practice of unlawful race discrimination and in retaliation for his opposition to Defendants' illegal practices; (2) in retaliation for filing a racial discrimination complaints with the Equal Employment Opportunity Commission against Defendants; and (3) as a result of Defendants' conspiracy to deprive persons of civil rights and interference with equal privileges and immunities under the laws, in violation of 42 U.S.C.A. § 1981; 42 U.S.C.A. § 1985(3); Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq., as amended ("Title VII"); the Hawaii Employment Practices Act, H.R.S. § 378-2 Discriminatory Practices; and H.R.S. § 378-61 et seq. Whistleblowers' Protection Act.

Defendants have conspired among themselves to run hospital surgery groups segregated along racial lines. Specifically, the corporate Defendants have maintained surgical operations within their respective hospitals which are racially

segregated so that surgeons of Asian descent receive preferential treatment. Caucasian surgeons have not been hired recently at Defendant the Queens Medical Center, or the new surgeons who were hired were forced out under excessive scrutiny in spite of their superior qualifications and performance, while several surgeons of Asian descent were retained in spite of problems with their performance.  At Defendant Queens Medical Center and Castle Medical Center, the vast majority of surgeons are Asian.  The Corporate Defendants have succumbed to this segregated arrangement as the result of a hiring and retention strategy and competitive concerns about market share with Caucasian and younger surgeons offering modern and more effective surgical methods. The segregated arrangement is illegal and is a violation of Title VII, 42 U.S.C.A. § 1981 and the Hawaii Employment Practices Act, H.R.S. § 378-2 Discriminatory Practices. Illegal hiring, review, assignment, promotion, discharge, and termination decisions are made with regard to new surgeons based on race and ethnicity. None of these factors is a bona fide occupational qualification.

PARTIES

1.      Plaintiff DAVID E. HENRY, M.D. (hereinafter "Dr. Henry") is a resident of the City and County of Honolulu, State of Hawai`i.

3

2.      Dr. Henry is a Caucasian, board-certified general and bariatric surgeon who completed a five-year general surgery residency at Michigan State University in June 2014 and a fellowship in minimally invasive and bariatric surgery at the prestigious University of Pittsburgh Medical Center program in Pittsburgh, Pennsylvania in June 2015. He became board-certified in General Surgery in 2015 and in Obesity Medicine in 2017.   He was licensed to practice medicine in the state of Hawaii in May 2015.

3.      On or about September 1, 2015, Dr. Henry was granted privileges to practice general and bariatric surgery at Castle Medical Center in Kailua, Hawai`i.

4.      On or about September 15, 2015, Dr. Henry obtained privileges to practice at the Queen's Medical Center in Honolulu, Hawai`i.

5.      Defendant the Queen's Medical Center is a Hawaii nonprofit corporation which operates a 505-bed acute care hospital located at 1301 Punchbowl Street, Honolulu, Hawai'i.

6.      Defendant Castle Medical Center is a Hawaii nonprofit corporation which operates a 160-bed acute care hospital located at 640 Ulukahiki Street, Kailua, Hawai`i.

7.      Defendants, the Queens Medical Center and Castle Medical Center ("Corporate Defendants"), are doing business within Hawaii, with offices and

4

places of conducting business in the city and county of Honolulu, Hawaii.

Individual defendants, Alan Cheung, M.D., Kathleen Mah, M.D., Leslie Chun,

M.D., Robert Hong, M.D., Robert Ohtani, M.D., and Mihae Yu, M.D. reside in the

city and county of Honolulu, Hawai`i.

8.      The Corporate Defendants receive part of their funding from public

sources and through public solicitation, including substantial federal and state

government funds, and receive tax benefits due to their non-profit status.  They

hold virtual monopoly in Hawaii in several important areas of clinical and

academic medicine and are subject to substantial government control and

regulation.  They act in these and other ways such that they are required to provide

due process to physicians who seek to acquire or maintain privileges to admit and

care for patients admitted to their facilities. They should be treated as state actors

for due process purposes.

9.      Defendant Alan Cheung, M.D. is a general and transplant surgeon.

He is the Medical Director of the Transplant Center at Defendant the Queen's

Medical Center.  He is also the Vice President of Medical Affairs at Defendant

Castle Medical Center.  Dr. Cheung is of Asian ancestry.  He is the leader of

Surgical Associates, Inc., an influential group of eight transplant surgeons, all of

whom are of Asian ancestry.  One of the members of Surgical Associates, Inc. is

Whitney Limm, M.D., who is the Chief Physician Executive of the Queen's Medical Center.

10.     Defendant Kathleen Mah, M.D. is a general surgeon who is a member of the medical staff at the Queen's Medical Center.  Dr. Mah performs surgical procedures to treat conditions affecting the abdomen and related structures.  She also performs breast surgery.  Dr. Mah is and at all relevant times was the Chief of General Surgery at the Queen's Medical Center.  Dr. Mah is and at all relevant times was a member of the Medical Executive Committee of the Queen's Medical Center.  Dr. Mah is of Asian ancestry.

11.     Defendant Dr. Robert Hong, M.D. is a cardiologist who is a member of the medical staff at the Queen's Medical Center.  Dr. Hong is the Chief of the Medical Staff at the Queen's Medical Center.  Dr. Hong is of Asian ancestry.

12.     Defendant Leslie Chun, M.D. is an internal medicine specialist who is a member of the medical staff at the Queen's Medical Center.  Dr. Chun is the Vice President of Medical Affairs at the Queen's Medical Center.  Dr. Chun is of Asian ancestry.

13.     Defendant Robb Ohtani, M.D. is an obstetrician/gynecologist who is a member of the medical staff at the Queen's Medical Center. He is the chair of the Professional Practice Evaluation Committee at the Queens Medical Center.  Dr.

Ohtani is of Asian ancestry.

14.     Defendant Mihae Yu, M.D. is general surgeon who specializes in critical care surgery. She is a member of the medical staff at the Queen's Medical Center and is a member of its Medical Executive Committee.  Dr. Yu is of Asian ancestry.

## JURISDICTION

15.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1332.   Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391.

## FACTS

16.     Plaintiff David E. Henry, M.D. was licensed to practice medicine in Hawai`i on May 18, 2015.

17.     Following completion of a fellowship in minimally invasive, bariatric, robotic, and general surgery at the University of Pittsburgh Medical Center, in June 2015, Dr. Henry was offered a position as a bariatric surgeon at the Castle Medical Center in its weight loss program known as the Hawaii Center for Metabolic and Bariatric Surgery and as a general surgeon to provide emergency department call coverage.  At about the same time, in June 2015, Dr. Henry was offered a position

in the Queen's Medical Center's on-call program to provide general surgical

consultation, care, and services.

18.     In July 2015, Dr. Henry sent a letter to Dr. Michael Hayashi and

Shawn Nishimura at the Queen's Medical Center's Medical Staff Office requesting

to be added to the teaching staff of the general surgery residency program.  Dr.

Henry did not receive any response to the letter.  However, at the same time and

within the next six months, several physicians and surgeons of Asian ancestry were

added to the teaching staff, including Dr. Dean Mikami and Dr. Kenric Murayama.

The Queen's Medical Center ignored Dr. Henry's requests to be added to the

teaching staff in spite of the fact that surgery residents at the Queen's Medical

Center regularly asked to work with Dr. Henry because he performed complex

surgeries using modern laparoscopic techniques.

19.     In approximately July 2015, Dr. Henry requested bariatric surgery

privileges at the Queen's Medical Center.  In response, the Queen's Medical

Center advised Dr. Henry that it did not need any new bariatric surgeons.

However, at about the same time, the Queen's Medical Center hired two additional

bariatric surgeons of Asian ancestry.

20.     In September 2015, Dr. Henry started working as a surgeon at the Queens Medical Center and Castle Medical Center, including taking general surgery calls.

21.     The Queen's Medical Center did not give Dr. Henry a new physician orientation, which is customary and was provided to new surgeons of Asian ancestry.

22.     The Queen's Medical Center's Medical Staff Office and its administrator Shawn Nishimura ignored Dr. Henry's numerous emails during the period of his employment, which made it difficult to perform his duties, while responding to the emails from the physicians of Asian ancestry.

23.     In February 2016, Dr. Henry requested to be added to the Queen's Medical Center's on-line physician directory, which is an important source of referrals and communication for physicians practicing at the Queen's Medical Center.  However, his repeated requests were ignored and he was not listed while practicing at the Queen's Medical Center.  New physicians of Asian ancestry were added to the directory promptly upon starting work at the Queen's Medical Center.

24.     Dr. Alan Cheung ignored Dr. Henry whenever they encountered each other during the period of Dr. Henry's employment at the Queen's Medical Center

9

having previously expressed his resentment to Dr. Henry in a telephone conversation with him in approximately March 2015.

25.     Dr. Kathleen Mah, as the Chief of Surgery at the Queen's Medical Center required that all of Dr. Henry's surgeries be proctored, even after he performed over 100 surgeries over the period of approximately eight months of his employment, even though the policies of the Queen's Medical Center required that only three to four initial surgeries of a new surgeon be proctored and that policy was applied to new surgeons of Asian ancestry.

26.     The continuing proctoring requirement was applied to Dr. Henry in spite of the fact that all of his proctor's reports were positive, but was not applied to surgeons of Asian ancestry even when an initial report raised concerns.

27.     When Dr. Henry began practicing at the Queen's Medical Center in September 2015, Dr. Mah was the only breast surgeon listed on the list of physicians on the website of the Queen's Medical Center's Cancer Center and she was competing in the Hawai`i market for breast surgery services.

28.     On April 20, 2016, approximately eight months after Dr. Henry first began performing surgeries at the Queen's Medical Center, and on the day he performed his first breast surgery at the Queen's Medical Center, Dr. Kathleen Mah imposed a precautionary suspension of Dr. Henry's privileges to perform

10

surgical procedures at the Queen's Medical Center.

29.     According to the medical staff bylaws of the Queen's Medical Center and Dr. Kathleen Mah's express agreement with Dr. Henry, such a precautionary suspension was only supposed to be in effect for a maximum of 14 days in order to give the medical staff time to investigate whatever its concerns were about Dr. Henry's practice.  During that time, the Medical Executive Committee at the Queen's Medical Center was supposed to give Dr. Henry an opportunity to meet with the Medical Executive Committee to address whatever concerns it had about his practice so that the suspension of his privileges could be lifted and he could return to practice as soon as possible.

30.     The Queen's Medical Center's Medical Executive Committee did not address the alleged concerns about Dr. Henry's practice raised by Dr. Kathleen Mah within 14 days of April 20, 2016, nor did it give him an opportunity to meet during that time to address the unspecified concerns about his practice.  Instead, the Queen's Medical Center simply continued the suspension of Dr. Henry's privileges indefinitely in effect imposing a summary suspension of Dr. Henry's privileges and precluding him from working as a surgeon at the Queen's Medical Center without a notice of charges against him or an opportunity for a hearing to contest any allegations, in violation of express provisions in the medical staff

11

bylaws of the Queen's Medical Center, which provide that in the event of a summary suspension of a physician's medical staff privileges he must be given a hearing within 60 days of the action.

31.　　The summary suspension of all of Dr. Henry's clinical privileges, effectively terminating his employment at the Queen's Medical Center was contrived by Dr. Kathleen Mah and Dr. Robert Hong, working in concert with Dr. Alan Cheung, Dr. Leslie Chun, Dr. Robert Ohtani, and Dr. Mihae Yu, to come up with a way to drive Dr. Henry out of practice in Hawai`i because he is Caucasian and he poses a competitive threat to the Asian doctors at the Queen's Medical Center, including Dr. Alan Cheung, Dr. Kathleen Mah and Dr. Mihae Yu.

32.　　Dr. Kathleen Mah was attacking Dr. Henry almost from the moment he began practicing at the Queen's Medical Center repeatedly causing his cases to be reviewed, checking his files, and disparaging his credentials as a surgeon to third persons.

33.　　Dr. Kathleen Mah and Dr. Mihae Yu conspired with Dr. Robert Hong, Dr. Alan Cheung, Dr. Leslie Chun, and Dr. Robert Ohtani to end Dr. Henry's career as a surgeon in Hawaii because of his race, or his race was a motivating factor in their actions.

12

34     The Queen's Medical Center is responsible for the actions of Dr. Kathleen Mah, Dr. Mihae Yu, Dr. Robert Hong, Dr. Alan Cheung, Dr. Leslie Chun, and Dr. Robert Ohtani on the basis of the respondeat superior doctrine.

35.     There is no merit to Defendants' criticism of Dr. Henry's work. Each of the cases upon which the Queen's Medical Center and the foregoing co-conspirators rely as a basis for the unstated putative concerns of the Queen's Medical Center and its Medical Executive Committee were reviewed in detail by Dr. Garth R. Jacobsen, M.D., Professor of Clinical Surgery and Residency Director of the General Surgery Program at the University of California, San Diego, School of Medicine and were found to have been performed by Dr. Henry well within the applicable standards of care.

36.     Dr. Jacobsen concluded in his written report that "Any decision to sanction or discipline Dr. Henry or to limit his hospital privileges based on this data or any of the ... reviewed cases would be. . . . unsupportable and a miscarriage of a medical staff's obligation to conduct ethical and proper peer review.  Dr. Henry has shown himself to be a skilled surgeon and that his care and treatment of the four patients cited by [the Queen's Medical Center] was reasonable and proper, especially given the very challenging scenarios presented by these patients with complex conditions and multiple co-morbidities."

37.    The ongoing, indefinite suspension of Dr. Henry's medical staff privileges at the Queen's Medical Center not only constitutes a violation of his rights to fairness and due process but also constitutes a discriminatory employment practice prohibited by the federal and state law.  Moreover, Dr. Henry has been treated differently than other similarly situated physicians of Asian ancestry at the Queen's Medical Center, some of whom have committed acts of gross medical negligence in recent years, even causing death, but whose privileges, which are a term of a employment contract between the Queen's Medical Center and each of its physicians, have never been suspended, nor has any substantial adverse action ever been taken against their ability to practice at the Queen's Medical Center because of their race and because they pose no economic threat to the individual Defendants.

38.    Dr. Henry's career as surgeon was cut short due to the discriminatory and retaliatory employment practices of Defendants.

39.    On April 28, 2016, Dr. Henry wrote a letter to Dr. Kathleen Mah noting his excellent patient care and alleging discrimination.

40.    In retaliation for Dr. Henry's complaint of discrimination, the Queen's Medical Center through the co-conspirators  Dr. Kathleen Mah, Dr. Mihae Yu, Dr. Robert Hong, Dr. Alan Cheung, Dr. Leslie Chun, and Dr. Robert Ohtani increased

scrutiny of his practice to involve all surgeries he had performed at the Queen's

Medical Center, which is not done to other surgeons.

41.    The Queen's Medical Center failed to perform any investigation of

Dr. Henry's complaint.  Instead, on or about May 9, 2016, Dr. Robert Hong wrote

a letter to Dr. Henry in which he included baseless and false criticisms of Dr.

Henry's care for several of his patients over a period of the prior six months, about

whom Dr. Henry had not previously received any negative comments.  Dr. Robert

Hong's increased and unjustified scrutiny was in retaliation for Dr. Henry's

complaint of discrimination and in furtherance of the conspiracy to discriminate

and retaliate against Dr. Henry.

42.    In mid-May 2016, Dr. Henry was subjected to increased scrutiny at

Castle Medical Center, where he had been working since September 1, 2015, as a

bariatric surgeon and general on-call surgeon without receiving any prior criticism.

Upon information and belief, the increased scrutiny and subsequent criticism were

instigated by Dr. Alan Cheung, who held leadership positions at both the Queen's

Medical Center and Castle Medical Center, and who displayed a discriminatory

attitude towards Dr. Henry from their first contact.

43.    Dr. Alan Cheung appears to have personally scrutinized Dr. Henry's

patient files in an effort to find any pretext regarding Dr. Henry's patient care that

could justify suspending his hospital privileges and terminating his practice of surgery. There were never any complaints regarding Dr. Henry's patient care during his residency, fellowship, and practice in Hawaii prior to the discriminatory and retaliatory actions of Dr. Alan Cheung, Dr. Kathleen Mah, Dr. Robert Hong, Dr. Leslie Chun, and the other co-conspirators. Dr. Henry's surgeries utilized state of the art methods and were successful. The length of hospital stay of his patients, their rates of complications, mortality, and readmission, were all better than the other surgeons at the Queens Medical Center, Castle Medical Center, and the surgeons nationally. Dr. Henry was well liked by the staff and patients at the Queen's Medical Center and Castle Medical Center. However, as result of the discriminatory and retaliatory actions of Dr. Alan Cheung, including increased scrutiny and unjustified criticism that followed, on June 21, 2016, Castle Medical Center terminated Dr. Henry's general surgery call contract; on June 28, 2016, Dr. Henry's privileges at Castle Medical Center were suspended, and on August 18, 2016, the suspension became permanent.

44.     On May 23, 2016, Dr. Leslie Chun called Dr. Henry and told him that Leadership Council had written a letter to him but that he would hold the letter and allow Dr. Henry to resign voluntarily from the Queen's Medical Center, in lieu of threatened reporting Dr. Henry to the National Practitioner Data Bank, which

would cause severe and permanent damage to his career.  Dr. Leslie Chun also

encouraged Dr. Henry not to seek legal counsel.  Dr. Leslie's Chun's call was part

of the co-conspirators' effort to put pressure upon Dr. Henry in order to

accomplish their discriminatory objectives.

45.     Subsequently, Dr. Leslie Chun made additional repeated phone calls

to Dr. Henry encouraging him to resign, in further effort to accomplish the co-

conspirators' objectives while the Queen's Medical Center had an on-line job

listing for a general surgeon.

46.     On August 22, 2016, Dr. Henry applied for staff membership and

clinical privileges at Wahiawa General Hospital, but the application could not be

processed and was rejected because the Queen's Medical Center and Castle

Medical Center failed to respond to Wahiawa General Hospital's requests for

information regarding Dr. Henry.  The Queen's Medical Center and Castle Medical

Center ignored Wahiawa General Hospital's inquiries in retaliation for Dr. Henry's

complaints of discrimination against them.

47.     On November 1, 2016, Dr.  Henry filed a charge of discrimination

against the Queen's Medical Center.

48.     Castle Medical Center's intense review of Dr. Henry's cases resulted

in unfair criticism of eight cases that led to summary suspension of his admitting

privileges on June 21, 2016 on the pretext that his work did not meet Castle

Medical Center's standards for patient care.  In reality, Dr. Alan Cheung

orchestrated these adverse actions against Dr. Henry because of a strong bias

against Caucasian physicians and Dr. Henry particularly, even before he came to

Hawai`i in July 2015, and in furtherance of the conspiracy to terminate Dr. Henry's

career in Hawaii for discriminatory and retaliatory reasons.

49.    Dr. Henry's surgical performance did in fact meet the standard of

care.  Dr. Henry's work is supported by a detailed review of his cases in a detailed

report issued by Dr. Garth Jacobsen, a distinguished professor of clinical surgery

on the faculty at the University of California-San Diego.

50.    Castle Medical Center continued to retaliate against Dr. Henry by

deliberately delaying the promised administrative review for months, in violation

of its own medical staff bylaws.

51.    On August 26, 2016, Castle Medical Center's Medical Executive

Committee decided that it would not consider reinstating Dr. Henry's clinical

privileges unless he received further training it approved of, and even then it

refused to promise that it would in fact reinstate his privileges if he did that.

52.    Dr. Henry requested a hearing on the Medical Executive Board's

decision. The hearing was supposed to be held in the fall of 2016, but Castle

Medical Center continued to retaliate against Dr. Henry by delaying it for over another eight months, until August 1, 2017.

53.     On February 21, 2017, Dr. Henry filed a complaint of discrimination and retaliation with the U. S. Equal Employment Opportunity Commission based upon Castle Medical Center's ongoing suspension of his clinical privileges and its deliberate delay in providing him with a fair administrative hearing.

54.     An administrative hearing regarding Castle Medical Center's recommendation that Plaintiff receive unspecified additional training was finally held on August 1 and August 2, 2017.

55.     On September 11, 2017, a hearing committee upheld the recommendation without providing any reasons for doing so, in violation of express provisions contained in Castle Medical Center's medical staff bylaws.

56.     Dr. Henry appealed the hearing committee's decision to the Appeal Board of Castle Medical Center, which on January 3, 2018, upheld the hearing committee's decisions without giving any reason for doing so.

57.     In May 2017, Dr. Henry reapplied for clinical privileges at the Queen's Medical Center, which was ignored and was not processed in violation of the bylaws requiring the application to be processed within six months.  The Queen's Medical Center's failure to process the application was due to

discrimination and retaliation for Dr. Henry's letter complaining of discrimination

and the charge he filed with the Equal Employment Opportunity Commission.

58.    The Medical Executive Committee met on June 8,2017 regarding Dr.

Henry.  To date, the suspension continues and no conclusion of that meeting has

been provided to Dr. Henry, nor has he been given notice of any charges or

allegations of any hearing at which he may defend himself.

59.    Dr. Mihae Yu attended the June 8, 2017 Medical Executive

Committee meeting despite her clear conflict of interest and stated criticisms

of Dr. Henry's care in two cases, a year and half after those cases, when she had

made no criticism at the time she and Dr. Henry were caring for those patients and

had concurred in the course of treatment followed by Dr. Henry.

60.    Dr. Yu's acts and statements about Dr. Henry were made in bad faith

and were and are a substantial factor in causing the Queens Medical Center to

continue its suspension and to continue denying Dr. Henry a hearing in this matter.


COUNT I.

RETALIATION, IN VIOLATION OF 42 U.S.C.A. § 1981

61.    Plaintiff incorporates by reference the allegations set forth in the

preceding paragraphs of this Complaint as if fully set forth here.

20

62.     Plaintiff was punished by Defendants when he complained of discrimination on the basis of race in  enforcing of contracts, including contracts of employment for positions with Defendants. Defendants' actions as set forth above were in retaliation for Plaintiff's internal opposition to and complaints regarding Defendants' racially discriminatory practices, and were in violation of 42 U.S.C.A. § 1981, as amended.

63.     Plaintiff's opposition to Defendants' discrimination and preferential treatment of employees of Asian ancestry, directly resulted in Defendants' terminating Plaintiff's employment.  This constitutes retaliation and is in violation of 42 U.S.C.A. § 1981, as amended.

64.     Plaintiff is entitled to the relief requested below.

## COUNT II.

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS, IN VIOLATION OF 42 U.S.C.A. § 1985(3)

65.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth here.

66.     Defendants have conspired within and between themselves as separate corporate entities and individuals to segregate their employees, based on race. Through this practice of racial segregation, Defendants have deprived a class of

persons, including, but not limited to, Caucasian employees, of equal protection of the laws, and of equal privileges and immunities under the laws, and have individually and in concert acted in furtherance of that conspiracy.

67.    Plaintiff was injured by Defendants' conspiracy in that he is a member of a protected class and was deprived of a property interest in his continued employment, in violation of 42 U.S.C.A. § 1985(3).

68.    Plaintiff is entitled to damages, as set forth below.

## COUNT III.

## RACIAL DISCRIMINATION, IN VIOLATION OF TITLE VII

69.    Plaintiff incorporates each and every preceding paragraph of this Complaint as if set forth fully here.

70.    Plaintiff is an employee of Caucasian ancestry who was terminated from Defendants the Queens Medical Center and Castle Medical Center, because of his race, and was replaced by employees of Asian ancestry. Defendants' actions constitute unlawful, intentional racial discrimination in violation of Title VII of the Civil Rights Act, as amended.

71.    Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' racial discrimination against Plaintiff was undertaken in bad faith.

72.    Plaintiff is entitled to damages, as set forth below.

COUNT IV.

RETALIATION, IN VIOLATION OF TITLE VII

73.    Plaintiff incorporates each and every preceding paragraph as if set forth fully here.

74.    Defendants subjected Plaintiff to adverse employment action for opposing unlawful and discriminatory employment practices.  Plaintiff internally complained of the discrimination that he was witnessing and refused to assist or participate in Defendants' unlawful employment discrimination.  Defendants' actions thus constitute unlawful retaliation for opposing employment practices made unlawful by Title VII, and is in violation of Title VII of the Civil Rights Act, as amended.

75.    Plaintiff was subject to adverse employment action in retaliation for filing a racial discrimination charge, testifying, assisting and participating in an investigation and proceeding against his former superiors at Defendants the Queen's Medical Center and Castle Medical Center. Defendants Kathleen Mah, M.D., a close professional ally of Defendant Alan Cheung, M.D., retaliated against Plaintiff by suspending indefinitely and thereby terminating his employment as reprisal for Plaintiff's naming Defendants in his EEOC complaint. Defendants' actions thus constitute unlawful retaliation against Plaintiff because he filed a

23

racial discrimination charge, and is in violation of Title VII of the Civil Rights Act, as amended.

76.    Plaintiff is entitled to the relief set forth below.

## COUNT V.

## VIOLATIONS OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS

77.    Plaintiff incorporates each and every preceding paragraph as if set forth fully here.

78.    There is not and never has been a reasonable basis for suspending Dr. Henry's clinical privileges at the Queen's Medical Center and Castle Medical Center.

79.    Defendants have acted arbitrarily, capriciously, dishonestly, and maliciously, with the specific and deliberate intent of harming Dr. Henry and destroying his ability to treat patients in competition with Dr. Kathleen Mah, Dr. Yu, and other favored physicians at the Queens Medical Center.

80.    Dr. Henry has no remedies available to him other than application for relief to this Court.

81.    The actions of the Defendants were done intentionally, knowingly, grossly negligently, and in conscious and wanton disregard of the rights of Dr. Henry, warranting an award of exemplary and punitive damages,

24

82.     The Defendants' actions and omissions have violated and will

continue to violate Dr. Henry's rights to due process of law guaranteed by Article I

of the Constitution of the State of Hawai`i and the First and Fourteenth

Amendments to the Constitution of the United States.

83.     The actions of Defendants summarily suspending and continuing

suspension of Dr. Henry's clinical privileges without a fair hearing and without

affording Dr. Henry fair procedural rights is a violation of existing Hawai`i law

and the Constitutions of the State of Hawai`i and of the United States.

84.     As a direct and proximate result of the Defendants' actions and

omissions, Dr. Henry has suffered and continues to suffer irreparable harm

requiring immediate injunctive relief.

85.     Defendants' wrongful summary suspension of Dr. Henry's privileges

violated his due process rights because (i) Dr. Henry was not provided with

documents and materials necessary to present evidence and defend himself; (ii) he

has not been given (and under the Bylaws is entitled to) a fair hearing or right to

appeal the suspension of his clinical privileges; (iii) the actions taken against him

did not satisfy the Health Care Quality Improvement Act laws; (iv) the actions

taken against him were not taken in the reasonable belief that action was warranted

or in futherance of quality health care, nor was a reasonable effort made to obtain

25

relevant facts supporting the summary suspension; and (v) the actions taken against him were malicious, arbitrary, unreasonable, discriminatory and/or retaliatory and taken for an improper purpose other than safeguarding patients.

86.     By reason of Defendants' actions and omissions described above, and as a direct and proximate result of such conduct by Defendants, Dr. Henry has been damaged in an amount that shall be shown at trial, and further is entitled to have the Court provide the due process that has been denied to him and enjoin any and all proceedings and/or rules or Bylaws that fail to provide the required due process.

87.     Plaintiff is entitled to the relief set forth below.

COUNT VI.

RACIAL DISCRIMINATION, IN VIOLATION OF THE DISCRIMINATION IN EMPLOYMENT PRACTICES ACT

88.     The preceding paragraphs are incorporated by reference as if fully set forth here.

89.     Defendant' termination of Plaintiff was due, at least in part, to his race and constitutes unlawful discrimination in employment on the basis of race in violation of the Hawaii Employment Practices Act, H.R.S. § 378-2 Discriminatory Practices, and is part of a larger pattern and practice of race discrimination at the business premises of Defendants.

90.    As a direct and proximate result of Defendant' conduct, Plaintiff has been damaged and is entitled to the relief set forth below.

## COUNT VII.
## RETALIATION, IN VIOLATION OF THE WHISTLEBLOWERS' PROTECTION ACT

91.    The preceding paragraphs are incorporated by reference as if fully set forth here.

92.    Defendants terminated Plaintiff in retaliation for his internal opposition to, and refusal to participate in, Defendants' pattern and practice of racial discrimination made unlawful by H.R.S. § 378-61 et seq. Whistleblowers' Protection Act.

93.    As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged and is entitled to the relief set forth below.

## COUNT VIII.

## AIDING AND ABETTING DISCRIMINATION AND RETALIATION

94.    The preceding paragraphs are incorporated by reference as if fully set forth here.

95.    Defendants did knowingly aid, abet, incite, compel, counsel, command, induce, coerce, and/ or procure the doing of any of the discriminatory and retaliatory practices against Plaintiff forbidden by HRS § 378-2 and 378-62,

or by the federal law; or participated in proscribed activities and tried to make them

succeed; or attempted to do so.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the

following relief be granted:

1. Plaintiff be awarded a declaratory judgment that Defendants have violated

42 U.S.C.A. § 1981, 42 U.S.C.A. § 1985(3), Title VII of the Civil Rights Act, as

amended, the Whistleblowers' Protection Act, and the Discrimination in

Employment Act;

2. This Court enter a permanent injunction prohibiting Defendants from

engaging in unlawful employment practices in violation of 42 U.S.C.A. § 1981, 42

U.S.C.A. § 1985(3), Title VII of the Civil Rights Act, and the Discrimination in

Employment Act;

3. Full back pay from the date of Plaintiff's termination, taking into account

all raises to which Plaintiff would have been entitled but for his unlawful

termination, with prejudgment interest;

4. Reinstatement to Plaintiff's former position with Defendants at the same

pay grade, or, in the alternative, front pay to compensate Plaintiff for lost future

compensation;

5. Plaintiff have and recover compensatory damages;

6. Plaintiff have and recover punitive damages;

7. Plaintiff have and recover damages occasioned by Defendants' conspiracy, since he was deprived of property interests pursuant to 42 U.S.C.A. § 1985(3);

8. Plaintiff have and recover his attorney's fees and costs of litigation pursuant to 42 U.S.C.A. § 1988 and 29 U.S.C.A. § 216; and HRS Ch. 578.

9. Such other and further relief that this Court or the finder of fact deems equitable and just.


DATED: Honolulu, Hawaii, December 21, 2018.


_____
DENNIS W. KING
JOHN WINNICKI
Attorneys for Plaintiff
David E. Henry

## DEMAND FOR JURY TRIAL

Plaintiff David E. Henry hereby demands trial by jury on all claims and issues contained in this case.

DATED: Honolulu, Hawaii, December 21, 2018.

_____

DENNIS W. KING
JOHN WINNICKI
Attorneys for Plaintiff
David E. Henry

30