IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID E. HENRY, M.D., | CIVIL NO. 18-00500 JAO-WRP |
| Plaintiff, | ORDER GRANTING DEFENDANT CASTLE MEDICAL CENTER'S MOTION TO DISMISS PLAINTIFF DAVID E. HENRY, M.D.'S [104] SECOND AMENDED COMPLAINT FILED JANUARY 11, 2022 |
| vs. | |
| CASTLE MEDICAL CENTER, | |
| Defendant. | |

**ORDER GRANTING DEFENDANT CASTLE MEDICAL CENTER'S MOTION TO DISMISS PLAINTIFF DAVID E. HENRY, M.D.'S [104] SECOND AMENDED COMPLAINT FILED JANUARY 11, 2022**

This action arises from Defendant Castle Medical Center's ("Castle") — acting in concert with The Queen's Medical Center ("Queen's") — alleged discrimination and retaliation against Plaintiff David E. Henry, M.D. ("Plaintiff") based on his race.  Castle moves to dismiss the Second Amended Complaint ("SAC") because Plaintiff's claims are barred by claim preclusion and alternatively fail to state a claim and/or are untimely.  ECF No. 105.  For the following reasons, the Court GRANTS Castle's Motion to Dismiss Plaintiff David E. Henry, M.D.'s [104] Second Amended Complaint Filed January 11, 2022 ("Motion" or "Motion to Dismiss").

## BACKGROUND

**A.     Factual Background**

Plaintiff, a Caucasian male, is a board-certified general and bariatric surgeon.  ECF No. 104 ("SAC") ¶ 2.  On May 18, 2015, he was licensed to practice medicine in Hawaiʻi.  *Id.* ¶ 16.  Shortly thereafter, Castle offered him a position as a bariatric surgeon for its weight loss program, Hawaii Center for Metabolic and Bariatric Surgery, and as a general surgeon for emergency department call coverage.  *Id.* ¶ 17.  Queen's also extended an offer for Plaintiff to provide general surgical consultation, care, and services.  *Id.*

In July 2015, Plaintiff asked to be added to Queen's teaching staff for the general surgery residency program.  *Id.* ¶ 18.  He claims to have received no response while several physicians and surgeons of Asian ancestry became members of the teaching staff in the six months that followed.  *Id.*  Plaintiff similarly avers that Queen's denied his request for bariatric surgery privileges — citing a lack of need for new bariatric surgeons — yet hired two Asian bariatric surgeons around the same time.  *Id.* ¶ 19.

On September 1 and 15, 2015, Plaintiff was granted privileges to practice general and bariatric surgery at Castle, and to practice at Queen's, respectively.  *Id.*

2

¶¶ 3–4.  Plaintiff began working as a surgeon at Castle and Queen's in September 2015.  *Id.* ¶ 20.

### 1.    Queen's Conduct

Although Queen's is no longer a defendant in this lawsuit, its alleged actions and involvement with Castle are the subject of claims in the SAC.  In particular, Plaintiff alleges that contrary to their treatment of Asian physicians, Queen's staff and physicians deprived him of opportunities, imposed greater requirements upon him, and ignored him and his requests/emails.  *Id.* ¶¶ 21–26, 32.  On April 20, 2016, Dr. Kathleen Mah, Queen's Chief of Surgery, imposed a precautionary suspension of Plaintiff's surgical privileges.  *Id.* ¶ 28.  Plaintiff accuses Queen's of failing to comply with the procedures set forth in its bylaws after his suspension, including an opportunity to meet with the Medical Executive Committee to address its concerns.  *Id.* ¶¶ 29–30.  And by indefinitely extending his suspension of privileges, Queen's effectively terminated his employment.  *Id.* ¶¶ 30–31.  According to Plaintiff, multiple Queen's physicians acted in concert to devise a way to drive him out of practice and end his career at Queen's and/or Hawaiʻi because he is Caucasian and poses a threat to Asian physicians.  *Id.* ¶¶ 31, 33.

Plaintiff claims that as a result of discriminatory and retaliatory employment practices, his career as a surgeon at Queen's was cut short.  *Id.* ¶ 38.  On April 28,

3

2016, he wrote a letter to Dr. Mah, alleging discrimination and highlighting his excellent patient care. *Id.* ¶ 39. In purported retaliation, Queen's expanded its scrutiny of Plaintiff to all of the surgeries he performed. *Id.* ¶ 40. On May 23, 2016, Dr. Leslie Chun, Queen's Vice President of Medical Affairs, informed Plaintiff that Leadership Council wrote Plaintiff a letter, but that he would hold the letter and allow Plaintiff to resign in lieu of reporting Plaintiff to the National Practitioner Data Bank. *Id.* ¶¶ 13, 47. Dr. Chun allegedly made subsequent phone calls encouraging Plaintiff to resign. *Id.* ¶ 48.

### 2.    Castle's Conduct

In mid-May 2016, Plaintiff began experiencing increased scrutiny at Castle — despite a lack of prior criticism — which he attributes to the racially discriminatory and retaliatory conduct of Dr. Alan Cheung, Queen's Medical Director of the Transplant Center and Castle's Vice President of Medical Affairs. *Id.* ¶¶ 10, 24, 42, 55. On June 21, 2016, Castle terminated Plaintiff's general surgery call contract; it suspended his privileges on June 28, 2016; and on August 18, 2016, unbeknownst to Plaintiff, the suspension became permanent. *Id.* ¶ 46.

Plaintiff alleges that in furtherance of its retaliatory conduct, Castle delayed administrative review, in violation of its Bylaws of the Medical Staff and Rules and Regulations ("Bylaws"). *Id.* ¶ 57; ECF No. 116-19. On August 26, 2016,

Castle's Medical Executive Committee declined to reinstate Plaintiff's clinical privileges unless he received approved additional training.  ECF No. 104 ¶ 58. Plaintiff claims that he requested a hearing regarding this decision.  *Id.* ¶ 59. According to Plaintiff, the hearing should have been held in the fall of 2016 but Castle delayed it until August 1, 2017 as a retaliatory measure.  *Id.*  Following the August 1 and 2, 2017 administrative hearing, a Hearing Committee upheld the Medical Executive Committee's decision without providing reasons for doing so. *Id.* ¶¶ 61–62.  Plaintiff appealed the Hearing Committee's decision to Castle's Appeal Board, which affirmed the decision on January 3, 2018.  *Id.* ¶ 63.

### 3.      Equal Employment Opportunity Commission ("EEOC") Proceedings

On November 1, 2016, Plaintiff filed a charge of discrimination against Queen's with the EEOC.  *Id.* ¶ 50.  The EEOC issued a right to sue letter as to this charge on September 22, 2018.  *Id.*

On February 21, 2017, Plaintiff filed a complaint of discrimination and retaliation with the EEOC regarding Castle's suspension of his privileges and deliberate delay in providing him with a fair administrative process.  *Id.* ¶ 60.  On November 7, 2017, the EEOC issued a right to sue letter regarding this complaint. ECF No. 105-9.

**B.  Procedural History**

**1.  *Henry v. Adventist Health Castle Medical Center*, Civil No. 18-00046 JAO-KJM ("*Henry I*")**

On February 2, 2018, Plaintiff filed a complaint pro se, alleging that Castle and Dr. Alan Cheung discriminated against him because he is Caucasian and that they retaliated against him due to his complaints of discrimination by suspending his clinical privileges and abusing the medical peer review system.  *Henry I*, ECF No. 1 ¶ 1.  Plaintiff asserted two causes of action:  (1) racial discrimination in violation of Title VII (Count One) and (2) retaliation for engaging in protected activities (Count Two).  *Id.*, ECF No. 1 ¶¶ 19–22.

On September 10, 2018, Castle filed a Motion for Summary Judgment.  *Id.*, ECF No. 37.  After the completion of briefing for the Motion for Summary Judgment, counsel appeared on Plaintiff's behalf and filed (1) an Ex-Parte First Motion to Continue Summary Judgment Motion Hearing and (2) a Motion to Appear Pro Hac Vice on behalf of Robert Meals.  *Id.*, ECF Nos. 52–53.  The Court granted in part and denied in part the request to continue the hearing.  *Id.*, ECF No. 59.  Magistrate Judge Kenneth Mansfield held a hearing on the pro hac vice motion, *see id.*, ECF No. 62, during which he gave Mr. Meals the option of attaining pro hac vice status and face a disciplinary complaint, or to withdraw the

6

motion.  ECF No. 116 at 9–10.  Following the hearing, Plaintiff withdrew the pro hac vice motion.  *Henry I*, ECF No. 63.

On December 14, 2018, the Court held a hearing on the Motion for Summary Judgment.  *Id.*, ECF No. 65.  On January 28, 2019, the Court granted summary judgment in Castle's favor, concluding that Plaintiff was not protected under Title VII because he was an independent contractor ("SJ Order").  *Id.*, ECF No. 70; *see also Henry v. Adventist Health Castle Med. Ctr.*, 363 F. Supp. 3d 1128, 1138 (D. Haw. 2019).  Judgment entered the same day.  *Henry I*, ECF No. 71.

On February 20, 2019, Plaintiff filed a Motion for Reconsideration of Order Granting Motion for Summary Judgment and/or Motion for Leave to Amend Complaint.  *Id.*, ECF No. 73.  The Court denied the motion on April 24, 2019 ("Reconsideration Order").  *Id.*, ECF No. 77; *see also Henry v. Adventist Health Castle Med. Ctr.*, CIV. NO. 18-00046 JAO-KJM, 2019 WL 1840843, at *1 (D. Haw. Apr. 24, 2019) ("*Henry II*").  The Court also denied Plaintiff's request to amend his complaint, which it could not consider because Plaintiff was not entitled to reconsideration under Federal Rule of Civil Procedure ("FRCP") 59 and 60.  *See Henry II*, 2019 WL 1840843, at *5 (citations omitted).

On May 13, 2019, Plaintiff filed a Notice of Appeal.  *Henry I*, ECF No. 78. The Ninth Circuit affirmed the SJ Order and Reconsideration Order on August 14,

2020.  *Id.*, ECF No. 83; *see also Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126 (9th Cir. 2020) ("*Henry III*").  Plaintiff's petition for writ of certiorari, filed on December 21, 2020, was denied on October 4, 2021.  *Henry I*, ECF Nos. 87–88.

### 2.    Present Case

Plaintiff commenced this action on December 21, 2018.  ECF No. 1.  On February 5, 2019, he filed a First Amended Complaint ("FAC").  ECF No. 8.

On March 14, 2019, Queen's filed a Motion for Partial Summary Judgment and a Motion to Dismiss Count V in the First Amended Complaint, ECF Nos. 23, 25, and Castle filed a Motion to Dismiss the First Amended Complaint, ECF No. 28.

On May 17, 2019, the parties stipulated to stay the proceedings between Plaintiff and Queen's pending mediation.  ECF No. 59.  Litigation between Plaintiff and Castle was unaffected.  *Id.*

On November 20, 2019, this case was reassigned to the undersigned because the issues are related to *Henry I*.  ECF Nos. 76–77.  Following reassignment, the claims against Queen's were dismissed by stipulation.  ECF No. 78.

On January 21, 2020, the Court imposed a stay pending the disposition of the appeal in *Henry I*.  ECF No. 84.  The Court lifted the stay on October 21, 2020,

upon the issuance of the Ninth Circuit's mandate.  ECF No. 89.  Because Plaintiff

represented that he intended to file a petition for writ of certiorari, the Court

reinstated the stay.  ECF No. 92.  The Court lifted the stay again on October 15,

2021, after the Supreme Court denied certiorari.  ECF No. 95.

On January 7, 2022, the parties stipulated to amend the First Amended

Complaint.  ECF No. 102.  Plaintiff filed the SAC on January 10, 2022, asserting

four claims:  Count I — discrimination and retaliation in violation of 42 U.S.C.

§ 1981, Count II — conspiracy to interfere with civil rights, in violation of 42

U.S.C. § 1985(3), Count III — violations of procedural and substantive due

process, and Count IV — aiding and abetting discrimination and retaliation.  ECF

No. 104.

On January 11, 2022, Castle filed the present Motion, ECF No. 105, and

Plaintiff filed a Motion for Partial Summary Judgment on Counts I and III of

Second Amended Complaint, ECF No. 107.  Plaintiff filed an Opposition to the

Motion on February 18, 2022.  ECF No. 116.  Castle filed its Reply on March 4,

2022.  ECF No. 118.

On March 10, 2022, Plaintiff filed an Ex Parte Motion for Temporary

Restraining Order ("TRO Motion").  ECF No. 121.  Castle filed an Opposition on

March 25, 2022, ECF No. 131, and Plaintiff filed his Reply on March 30, 2022, ECF No. 132.

The Court held a hearing on the present Motion and the TRO Motion on April 8, 2022.  ECF No. 138.

## LEGAL STANDARD

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

10

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

Courts may consider the affirmative defense of res judicata on a Rule 12(b)(6) motion.  *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Holcombe v. Hosmer*, 477 F.3d 1094, 1096–97, 1100 (9th Cir. 2007) (affirming dismissal of claims on preclusion grounds under FRCP 12(b)(6)); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)

11

(authorizing dismissal on res judicata grounds when there are no disputed issues of fact).

A claim may be dismissed at this stage on the basis that it is untimely. However, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (citation omitted).  In fact, "'[a] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

Castle moves for dismissal on the basis that Plaintiff's claims are barred by claim preclusion, and alternatively, that they are time barred and/or fail to state a claim.  ECF No. 105.

12

A.      **Judicial Notice And Conversion Of The Motion**

Castle requests judicial notice of Exhibits 2–12 to its Motion.  ECF No. 105-3 ¶¶ 3–13.  Plaintiff asks that the Motion be treated as a motion for summary judgment because he relies on facts outside of the pleadings.  ECF No. 116 at 6.  Castle urges the Court to reject this request.  ECF No. 118 at 3–4.

Under FRCP 12(b)(6), review is ordinarily limited to the contents of the complaint.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell*, 266 F.3d at 988.  A Rule 12(b)(6) motion is treated as a motion for summary judgment if matters outside the pleadings are considered.  *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  However, courts may "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).  In addition, courts may consider evidence necessarily relied upon by the complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448 (citations omitted).

The Court takes judicial notice of Exhibits 2–12 to Castle's Motion.  Under Federal Rule of Evidence 201, a court may take judicial notice of facts "not subject to reasonable dispute" that either "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)–(c)(1).  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citations omitted).

Castle's Exhibits 2–5 and 7–12[1] are filings from *Henry I* so they are properly the subject of judicial notice.  Castle's Exhibit 6 is the right to sue letter from Plaintiff's EEOC complaint against Castle, which is referenced in the SAC, is generally known within the Court's territorial jurisdiction, and "can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

[1]  Both Exhibits 4 and 8, which are copies of court decisions, have also been published.

questioned." Fed. R. Evid. 201(b)(2).  The Court also judicially notices Plaintiff's Exhibits 17 and 51, ECF Nos. 116-19, 116-52, as they are referenced in the SAC. Because judicial notice as to the foregoing documents is proper, the Court need not treat the Motion as one for summary judgment.

The Court declines to convert the Motion into one for summary judgment merely because Plaintiff elected to submit *81* exhibits in opposition to the Motion. These exhibits include evidentiary and extraneous materials that need not and should not be considered in connection with the Motion and would not change the disposition of the Motion in any event.  Indeed, Plaintiff appears to utilize his Opposition to obtain summary judgment review — attaching many of the same exhibits he submitted with his motion for partial summary judgment and concise statement of facts — when the Court expressly stated that the motion for partial summary judgment "will be addressed, if necessary, following the disposition of Defendant's Motion to Dismiss." ECF No. 109.  For these reasons, the Court disregards the exhibits attached to Plaintiff's Opposition, with the exception of Exhibits 17 and 51, which have been judicially noticed.

## B.    Abandonment Of Counts II (42 U.S.C. § 1985(3)) And IV (Aiding And Abetting)

Castle requests dismissal of the SAC with prejudice.  ECF No. 105-1 at 31. It argues that Counts II and IV are subject to dismissal as time barred and

implausible.  *Id.* at 24–28, 30–31.  In his Opposition, Plaintiff refutes Castle's

contention that Counts II and IV are untimely, but he does not challenge the

dismissal of these counts.  ECF No. 116 at 23 ("Though timely, Plaintiff will not

contest Counts II and IV as their applicability has diminished since Plaintiff settled

with Queens.").  Accordingly, there being no opposition to the dismissal of Counts

II and IV, and Plaintiff's counsel having confirmed the abandonment of these

claims at the hearing, they are DISMISSED with prejudice.

## C.    Claim Preclusion

Federal common law governs a federal court judgment's preclusive effect.

*See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation omitted).  In federal

question cases, federal courts develop the applicable res judicata rules, and the

Supreme Court has the "ultimate authority to determine and declare" those rules,

while in diversity cases, the law of the state in which the federal court sits governs.

*See id.* & n.4 (citations omitted).  Issue preclusion and claim preclusion,

collectively referred to as res judicata, define the preclusive effect of a judgment.

*See id.* at 892 (footnote omitted).  "Under the doctrine of claim preclusion, a final

judgment forecloses 'successive litigation of the very same claim, whether or not

relitigation of the claim raises the same issues as the earlier suit.'"  *Id.* (citation

omitted).  "By 'precluding parties from contesting matters that they have had a full

and fair opportunity to litigate,'" res judicata protects "against 'the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (brackets and citation omitted).

"Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (some internal quotation marks and citation omitted).  The party invoking claim preclusion bears the burden of establishing these elements.  *See id.* (citation omitted).  Here, the parties are identical, *see Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005), so the Court need only consider whether there was a final judgment on the merits in *Henry I* and an identity of claims between *Henry I* and the present claims.

## 1.    Final Judgment On The Merits

Castle asserts that the final judgment entered in *Henry I*, followed by the Ninth Circuit's affirmance and the Supreme Court's denial of Plaintiff's petition for writ of certiorari, satisfies this prong.  ECF No. 105-1 at 11–12.  Plaintiff refutes the existence of an applicable final judgment on the merits, arguing that the judgment in *Henry I* only pertained to the Title VII claims asserted therein.  ECF No. 116 at 11–12.

17

Directly contradicting his current argument, Plaintiff previously argued — in requesting a stay pending the appeal in *Henry I* — that the final judgment in *Henry I* would have res judicata effect here, except as to Counts II and IV.[2]  ECF No. 72 at 13–15.  The Court treats Plaintiff's concession as a judicial admission.  *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) (noting that courts "have discretion to consider a statement made in briefs to be a judicial admission" (citations omitted)).

Final judgment issued in *Henry I*.  The SJ Order addressed Plaintiff's Title VII claims, concluding that Plaintiff was an independent contractor for the purposes of Title VII and was not protected as a result.  *See Henry*, 363 F. Supp. 3d at 1138.  Judgment entered on January 28, 2019.  *Henry I*, ECF No. 71.  The Court issued the Reconsideration Order on April 24, 2019.  *See Henry II*, 2019 WL

---

[2]  During that point in the litigation, the claims corresponded to Counts II and VIII of the FAC.

At the hearing, Plaintiff's counsel argued that there is no contradiction, because the Court did not consider Castle's Motion to Dismiss then.  The Court rejects this argument, as it expressly explained that it considered the briefing in deciding to impose a stay.  ECF No. 82 ("After reviewing the parties' submissions regarding Defendant Castle Medical Center's Motion to Dismiss, the Court is inclined to stay this action pending the disposition of the appeal in *Henry v. Adventist Health Castle Medical Center*, Civil No. 18-00046 JAO-KJM ('*Henry I*').").  And even if the Court never formally considered the briefing, it is clear that Plaintiff advanced inconsistent positions in this case based on the relief he sought.

18

1840843, at *1.  The Ninth Circuit affirmed the SJ Order and Reconsideration

Order on August 14, 2020.  *See Henry III*, 970 F.3d at 1133.  Finally, the Supreme

Court denied Plaintiff's petition for writ of certiorari on October 4, 2021.  *Henry I*,

ECF No. 88.

The Court acknowledges that this prong is claim specific and that the final

judgment pertained to Plaintiff's Title VII claims, but the analysis does not end

there.  *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th

Cir. 2005).  After a court determines that a final judgment on the merits issued, and

identifies the claims to which the judgment pertained, it then considers whether

there is an identity of claims between the claim(s) for which judgment entered and

those asserted in the lawsuit at issue.  *See, e.g.*, *id.* at 690 ("[T]he only claim that

reached a final judgment on the merits in *HCPC I* was HCPC's cause of action

under NEPA.  We therefore turn to whether there is an 'identity of claims' between

HCPC's NEPA claim in that litigation and its various claims here.").

## 2.    Identity Of Claims

The Ninth Circuit looks at four factors to ascertain if there is an "identity of

claims":

> "(1) whether the two suits arise out of the same transactional
> nucleus of facts; (2) whether rights or interests established in the
> prior judgment would be destroyed or impaired by prosecution
> of the second action; (3) whether the two suits involve

19

infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions."

*Garity*, 828 F.3d at 855 (citation omitted).  These factors are not applied mechanistically.  *See id.* (citation omitted).  Because the first criterion is outcome determinative, it is the most important.  *See id.* (citation omitted); *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1028 (9th Cir. 2019) (citations omitted).  "[C]laim preclusion does not apply to *any and all* causes of action that *could* have been joined in the original action; it applies to claims and legal theories arising out of the same transactional nucleus of facts."  *Media Rts.*, 922 F.3d at 1026 n.10 (emphases added) (internal quotation marks, brackets, and citation omitted).  This distinction is important because it means that only those claims with a common nucleus of operative fact — as opposed to all discrete causes of action — would be precluded.  *See Hells Canyon*, 403 F.3d at 686 n.2 ("We note, briefly, that courts have not always been clear that the phrase 'claims that were raised or could have been raised,' refers to legal theories arising out of the same transactional nucleus of facts, rather than to distinct causes of action.  The contrary reading would suggest that any cause of action that could have been joined in the original action would be precluded, a point we rejected over four decades ago." (citations omitted)).

20

### a.   Common Nucleus Of Facts

Castle argues that this criterion is satisfied because the claims in the SAC could have been asserted in *Henry I* and that both lawsuits share the same transactional nucleus of facts.  ECF No. 105-1 at 12–20; ECF No. 118 at 6–9.  Plaintiff counters that the common-nucleus criterion alone prevents the application of claim preclusion because the claims are not identical.[3]  ECF No. 116 at 13.  Plaintiff also asserts that he could not present the current claims in the *Henry I* complaint because the Bylaws barred him from doing so until after May 10, 2018, and that the Court subsequently denied his request to amend the *Henry I* complaint to add the claims.  *Id.* at 13–15.

The Ninth Circuit employs a "transaction test to determine whether two suits share a common nucleus of operative fact."  *Media Rts.*, 922 F.3d at 1026 (internal quotation marks, alteration, and citation omitted).  "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."  *Id.* at 1027 (internal quotation marks and citations omitted).  In conducting this inquiry, courts primarily focus on the "facts or events from which the alleged harms arose."  *Id.*

---

[3]  The common-nucleus criterion does *not* require the clams in the different cases to be identical, as explained below.  *See Media Rts.*, 922 F.3d at 1026–27.

(citations omitted).  When harms arise at the same time, there is no reason a

plaintiff cannot bring the claims in the first action.  *See id.* (citation omitted).

Conversely, when harms arise from different facts, a plaintiff "is not obligated to

bring [the] claims on pain of preclusion."  *Id.* (citation and footnote omitted).

Here, the claims clearly arise from the same facts and events.  All of the

claims asserted in *Henry I* and the remaining claims in this case (Counts I and III)

are predicated on Castle's (1) alleged racially motivated discriminatory and

retaliatory actions against Plaintiff that ultimately resulted in his termination and

(2) failure to comply with applicable administrative procedures.  Indeed,

notwithstanding the inclusion of additional details in the SAC (as compared to the

complaint in *Henry I*), the gravamen of Plaintiff's allegations in each case concerns

identical actions, events, and individuals.  That Plaintiff has added claims to the

same set of facts does not diminish the relationship between the lawsuits.

In *Henry I*, Plaintiff alleged that Castle violated Title VII by discriminating

against him based on his race and retaliated against him for engaging in protected

activities.  *Henry I*, ECF No. 1.  Counts I and III share a common nucleus of

operative fact, and Plaintiff already conceded that the judgment in *Henry I* has a

preclusive effect on said claims.  ECF No. 72 at 13–15.

###### i.    Count I — Discrimination And Retaliation In Violation Of 42 U.S.C. § 1981

Count I alleges that Castle deprived Plaintiff of the rights enjoyed by Asian surgeons and physicians and discriminated against him on the basis of his race, in violation of 42 U.S.C. § 1981.  ECF No. 104 ¶¶ 72–73.  Count I further avers that Castle retaliated against Plaintiff when he complained about racial discrimination by suspending, terminating, or otherwise restricting his contractual rights and/or employment.  *Id.* ¶¶ 74–75.  The underlying allegations are identical to Plaintiff's Title VII claims in *Henry I*, even though he now asserts a violation of a different federal statutory provision.  *Compare* ECF No. 104 ¶¶ 42–43, 46, 55–63, 68–70, *with Henry I*, ECF No. 1 ¶¶ 10–18.  A plaintiff does not present a new claim simply by "adducing a different substantive law premise or ground"; "[d]ifferent theories supporting the same claim for relief must be brought in the initial action." *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Mpoyo*, 430 F.3d at 988 (citation omitted).

As discussed above, Plaintiff sought leave to add this claim — with identical verbiage — in *Henry I*.  *Compare* ECF No. 104 ¶¶ 71–77, *with Henry I*, ECF No. 73-6 ¶¶ 22–28.  Having done so, he effectively admitted that a common nucleus of operative fact exists.  Plaintiff moved to amend because the Court concluded that he was an independent contractor and was therefore unprotected under Title VII.

23

*See Henry*, 363 F. Supp. 3d at 1138.  He argued that he may bring a claim for employment discrimination and retaliation under § 1981, which is available to independent contractors, and that it shares the same substantive standard as Title VII claims.  *Henry I*, ECF No. 73 at 41–42.  In light of his positions in *Henry I*, Plaintiff cannot now persuasively argue that Count I does not arise from the same common nucleus of operative fact as the claims in *Henry I*.  And even if he had not made such arguments in *Henry I*, Count I is predicated on the same facts alleged in *Henry I*.

### ii.     Count III — Violations Of Procedural And Substantive Due Process

Plaintiff attempted to add this claim in *Henry I* for the same reasons he sought to add his § 1981 claim.  *Henry I*, ECF No. 73 at 43.  The current iteration of this claim is nearly identical to the version he proposed in *Henry I*.  *Compare* ECF No. 104 ¶¶ 8, 82–92, *with Henry I*, ECF No. 73-6 ¶¶ 39–50.  Importantly, this claim is founded on the same core facts as *Henry I* — that Castle mistreated Plaintiff based on his race and the same events and actors caused him harm.  ECF No. 104 ¶ 84 (averring that Castle's behavior was malicious and intended to "destroy[] his ability to treat patients in competition with . . . favored Asian

24

physicians"). According to Plaintiff, Castle's actions and omissions have and will continue to violate his First[4] and Fourteenth Amendment due process rights. *Id.* ¶ 87. As in *Henry I*, Plaintiff alleges that Castle: subjected him to unwarranted criticism due to his race, which resulted in the suspension of privileges and termination of his general surgery call coverage contract; delayed administrative review in violation of medical staff bylaws; delayed a hearing regarding the Medical Executive Committee's decision to deny reinstatement of clinical privilege until Plaintiff received approved training; and upheld decisions without providing any reasons. *Compare* ECF No. 104 ¶¶ 46, 55–63, 68–69, 88, 90, *with Henry I*, ECF No. 1 ¶¶ 10–18. So even though the purported harm is labeled differently now — as a constitutional violation — it derives from the precise acts underlying the claims in *Henry I*.

### iii. The Bylaws Did Not Prevent Plaintiff From Asserting His Claims In *Henry I*

In an effort to circumvent his prior admission that Counts I and III are precluded by *Henry I*'s judgment, Plaintiff argues for the first time that Castle's Bylaws precluded him from asserting his current claims until after the conclusion of administrative proceedings on May 10, 2018 (when Castle informed him by

---

[4] Plaintiff's citation to the First Amendment is presumably in error.

letter that he had no further recourse), which postdated the filing of the complaint in *Henry I*.  ECF No. 116 at 13–14.  Although Plaintiff acknowledges that Castle's Appeal Board[5] sent him a letter on January 3, 2018, he submits that this did not constitute the Governing Board's written decision., *i.e.*, it did not conclude the administrative proceedings.  *Id.* at 14.  Plaintiff suggests that claim preclusion is therefore inapplicable.  *Id.* at 13 (citing *Media Rts.*, 922 F.3d at 1021).

Ordinarily, "'claim preclusion does not apply to claims that accrue after the filing of the operative complaint' in the first suit."  *Media Rts.*, 922 F.3d at 1021 (citation omitted).  The Court does not confront such a situation here, however. Rather, Plaintiff's argument turns on his mischaracterization of the January 3, 2018 and May 10, 2018 letters.  On January 3, 2018, the Appeal Board — comprised of six appointed members — issued a written decision.  ECF No. 116-52.  Indeed, it is titled "**DECISION OF THE APPEAL BOARD REGARDING THE MATTER OF DAVID HENRY, MD**" and was provided to both parties in accordance with § 9.5.6(a) of the Bylaws.[6]  *Id.*  Plaintiff even admits in the SAC

---

[5]  Pursuant to § 9.5.4 of the Bylaws, "[t]he Governing Board may sit as the Appeal Board, or it may appoint an Appeal Board that shall be composed of not less than five members of the Governing Board."  ECF No. 116-19 at 39.

[6]  Section 9.5.6(a) provides:  "Except as otherwise provided herein, within 30 days
(continued . . .)

that the Appeal Board upheld the Hearing Committee's decision on January 3, 2018, *see* ECF No. 104 ¶ 63, so it is disingenuous for him to now argue that the Governing Board failed to provide a written decision, and that the failure somehow impaired his ability to include the present claims when he filed the complaint in *Henry I*.[7]  ECF No. 116 at 13–14.  Plaintiff's current argument is especially curious given that he already inconsistently argued on multiple occasions that the exclusion of Counts I and III in *Henry I*'s complaint was inadvertent and/or attributable to his pro se status.[8]  ECF No. 72 at 5–6; *Henry I*, ECF No. 73 at 41–43; *Henry I*, ECF No. 76 at 3–4.

---

(. . . continued)

after the conclusion of the appellate review process, the Governing Board shall render a decision in writing and shall forward copies to each party to the hearing." ECF No. 116-19 at 40.

[7]  Plaintiff's allegation that the Appeal Board failed to provide any reasoning is irrelevant because there is no such requirement in the Bylaws and he does not assert that the lack of reasoning violated the same.  *Compare* ECF No. 104 ¶ 63, *with id.* ¶ 62 (accusing the Hearing Committee of violating the Bylaws by affirming the Medical Executive Committee's recommendation without providing reasons for doing so).  Moreover, although the Court's decision does not rely on the May 10, 2018 letter, the letter offers no support to Plaintiff's position, as it addresses an inquiry by Plaintiff that followed the issuance of the Appeal Board decision.  ECF No. 116-45.

[8]  Even if Plaintiff was genuinely unaware of all possible claims, that would not save him from a claim preclusion bar.  *See Mpoyo*, 430 F.3d at 988 ("[I]gnorance

(continued . . .)

27

The validity of Plaintiff's new contention is also suspect because had the May 2018 letter actually marked the conclusion of the administrative proceedings, he should not have commenced *Henry I* when he did.  There is no rational explanation for why his Title VII claims were excepted from the Bylaws' exhaustion provision[9] while his § 1981 and due process claims were not.  At the hearing, Plaintiff's counsel argued that Plaintiff had to assert his Title VII claims when he did based on the 90-day limitation imposed by the EEOC's right to sue letter.  However, a statute of limitations issue created by Plaintiff does not explain how he was able to pursue Title VII claims before exhausting Castle's administrative remedies.  In fact, applying Plaintiff's Bylaws prohibition argument, he could not have even initiated EEOC proceedings before May 2018.  The Court rejects Plaintiff's Bylaws argument for these reasons.

---

(. . . continued)
of a party does not avoid the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party." (internal quotation marks, alteration, and citation omitted)).

[9]  Section 9.1.1 of the Bylaws states:  "If an adverse action with respect to a practitioner's staff membership status or clinical privileges is taken or recommended, the applicant or member must exhaust the remedies afforded by these Bylaws before resorting to legal action challenging the decision, the procedures employed, or asserting any claim."  ECF No. 116-19 at 28.

Contradicting his initial position that his present claims cannot be barred by preclusion because they accrued after he filed his complaint in *Henry I*, Plaintiff admits that Counts I and III could have been brought in *Henry I* but faults the Court for denying his request for leave to amend his complaint there.  ECF No. 116 at 14.  Plaintiff laments that he was consequently denied a full and fair opportunity to have all of his claims heard in *Henry I*.  *Id.* at 14–15.

When seeking leave to amend in *Henry I*, Plaintiff conceded that "critical claims were inadvertently omitted" from the complaint.  *Henry I*, ECF No. 73 at 41.  While Plaintiff relies heavily on his pro se status in *Henry I* to justify his missteps, he actually received assistance from retained mainland counsel who was neither licensed in Hawai'i nor admitted pro hac vice.  ECF No. 116 at 9–10; *see also Henry I*, ECF No. 52 at 4; *Henry I*, ECF No. 74 at 4–5, 7.  It is noteworthy that despite the continuous involvement of counsel — first mainland counsel then present counsel — Plaintiff waited until February 20, 2019, *after the entry of judgment*, to seek leave to amend.  *Henry I*, ECF Nos. 52, 71, 73.  Nothing prevented Plaintiff from moving to amend his complaint at any point before the disposition of the motion for summary judgment, and Plaintiff's counsel conceded at the hearing that Plaintiff could have sought to amend his complaint between

29

May and November 2018.[10]  Moreover, counsel could have filed a motion to amend the complaint before the motion for summary judgment was heard and adjudicated.

The deadline to add parties/amend the pleadings was originally October 26, 2018 and was later extended to February 22, 2019, and the summary judgment hearing was held on December 14, 2018.  *Id.*, ECF Nos. 24, 49, 65.  In affirming the Court's denial of Plaintiff's request for leave to amend his complaint, the Ninth Circuit explained that "once judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60."  *Henry III*, 970 F.3d at 1133 n.5 (internal quotation marks and citation omitted).  Therefore, Plaintiff's failures — not the post-judgment denial of amendment — prevented Counts I and III from being addressed in *Henry I*.  "Denial of leave to amend in a prior action based on dilatoriness does not prevent application of res judicata in a subsequent action." *Mpoyo*, 430 F.3d at 989.

---

[10]  Plaintiff's counsel continued to cite to Plaintiff's pro se status at the hearing but the record is clear that Plaintiff was never truly pro se for the reasons explained above, and even if he were, he would not be excused from complying with all rules and statutes, *see* Local Rule 81.1(a), nor meeting deadlines.

30

In sum, Counts I and III share the same transactional nucleus of operative fact as *Henry I*.  It is appropriate to weigh this criterion more heavily where, as here, Plaintiff unjustifiably delayed in seeking to amend his complaint in *Henry I*. *See id.* at 988 ("It is also appropriate to weight more heavily the common nucleus of operative fact criterion here where denial of leave to amend was based on unjustified untimeliness on the part of the plaintiff that would cause unfair prejudice to the defendant.").

### b.   Remaining Criteria

The Court now addresses the remaining criteria, which, taken together with the aforementioned criterion, support the application of claim preclusion.  The "rights or interests" criterion is the only one weighing against claim preclusion because the prior judgment would not be destroyed or impaired by the litigation of this case.

Whether the "infringement of the same right" criterion weighs in favor of Plaintiff is inconclusive.  The governing caselaw on this criterion is neither concrete nor well-developed, but the Ninth Circuit "generally perform[s] a basic matching exercise."  *Garity*, 828 F.3d at 856 (citation omitted).  Notwithstanding that the legal provisions relied upon by Plaintiff differ between the two actions, Plaintiff's claims all stem from his right to be free from discrimination and

retaliation.  Thus, matching the claims is not alone determinative.  Plaintiff himself argued that his Title VII claims in *Henry I* and his § 1981 claim (Count I here, with an identical claim proposed post-judgment in *Henry I*) are governed by the same legal standard.  *Henry I*, ECF No. 73 at 41–42.  And although Plaintiff's due process claim (Count III here, which he also sought to add in *Henry I*) concerns constitutional rights, it is predicated on allegations that in discriminating and retaliating against him, Castle also violated his due process rights.  ECF No. 104 ¶¶ 83–91.  Plaintiff's reliance on the same underlying facts for all of his claims demonstrates that the crux of the litigation is Castle's infringement of his right to be free from retaliation and racial discrimination.  Nevertheless, it is unclear that this would cause the criterion to definitively sway in Castle's favor given that Plaintiff labels identical conduct as an infringement of his due process rights. Even if this criterion weighed in Plaintiff's favor, however, the balancing of the other criterion would still militate in favor of claim preclusion.

Finally, the evidence is substantially the same in both cases, and even identical in many respects.  The Ninth Circuit has found evidence to be identical when substantial portions of factual claims from the first complaint are contained in the second complaint.  *See Garity*, 828 F.3d at 855 n.6.  Plaintiff focuses on the differing scope of discovery in the two cases, *see* ECF No. 116 at 16, but that is not

the salient inquiry.  Plaintiff proffers that the "discovery *to be conducted* in this case will largely focus on retaliation in suspending Plaintiff and deprivation of Due Process in CMC's sham peer review as compared to the employment evidence covered in the first proceeding." *Id.* (emphasis added).  Yet Plaintiff has already filed a motion for partial summary judgment on Counts I and III with 81 exhibits, many of which overlap with the evidence submitted in *Henry I* and/or are relevant to Plaintiff's allegations of discrimination and retaliation raised in *Henry I* and this case.  ECF Nos. 107–08.

That some of the evidence presented in *Henry I* related to the threshold issue of whether Plaintiff was an employee or independent contractor does not weigh in Plaintiff's favor.  Here, the evidence submitted in connection with Castle's motion for summary judgment in *Henry I* pertains to allegations in the SAC and some of it is identical to evidence submitted in this case.  *Compare* ECF Nos. 104, 107–08, 116-1, *with Henry I*, ECF Nos. 38, 40–41.  The parties even entered into a stipulation — drafted by Plaintiff — to use discovery produced in *Henry I* in this action.  ECF No. 120 at 2.  Moreover, the evidence related to the Title VII and § 1981 claims is identical.  The same evidence would also be relevant to Plaintiff's due process claim because said claim is intertwined with the very conduct underlying the Title VII and § 1981 claims, even though distinct evidence would

33

be required to prove due process violations.  *See Mpoyo*, 430 F.3d at 987–88

("Some evidence of Litton's actions would certainly overlap because Mpoyo

disputes a single act of termination stemming from a course of employment.  Other

evidence supporting the two actions would likely be distinct:  to prove Title VII

violations, Mpoyo would need to demonstrate disparate treatment, protected

conduct and retaliation; to prove FMLA and FLSA violations, Mpoyo would need

to show protected leave, action in contravention of that leave and overtime work

that was not compensated.").

On balance, the governing criteria weigh in favor of claim preclusion and

compel dismissal of this action.  The Court accordingly GRANTS Castle's Motion.

## D.   Equitable Exception To Claim Preclusion

In a final effort to escape the preclusive effect of *Henry I*, Plaintiff urges the

Court to apply an equitable exception to claim preclusion due to the unusual

hardship he has suffered.  ECF No. 116 at 17 (citing *Maher v. GSI Lumonics, Inc.*,

433 F.3d 123, 128 (1st Cir. 2005); *Montana v. United States*, 440 U.S. 147, 164

n.11 (1979)).[11]  The Ninth Circuit has rejected the concept that "equitable

principles preclude application of res judicata":

---

[11]  In *Maher v. GSI Lumonics, Inc.*, which has no precedential value, the First

(continued . . .)

The Supreme Court has made clear, however, that there is "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*."  The Court explained that "[t]he doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case" and rejected any equitable exceptions to the application of res judicata based on "public policy" or "simple justice."

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001)

(quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981))

(brackets in original).  Thus, there is no equitable exception available to Plaintiff.

The Court is not unsympathetic to the challenges currently facing Plaintiff.

But the governing law mandates dismissal on claim preclusion grounds.

---

(. . . continued)

Circuit indicated that an "occasional exception" to res judicata could be made when "unusual hardship" exists.  433 F.3d at 128 (citation omitted).  But the *Maher* court rejected the application of an equitable exception where the plaintiff "had a full and fair opportunity to assert diversity jurisdiction and litigate all his claims in one proceeding, but he chose not to do so" and his actions resulted "in the preclusion of his suit."  *Id.*  Thus, even if *Maher* governed, it would not support an equitable exception given Plaintiff's conduct.  Like *Maher*, *Montana v. United States* has no applicability here.  There, the Supreme Court stated in a footnote that "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."  *Montana*, 440 U.S. at 164 n.11 (citations omitted).  Plaintiff had a full and fair opportunity in *Henry I* to litigate the claims he now pursues but failed to timely assert them.

## CONCLUSION

For the reasons stated herein, Castle's Motion to Dismiss is GRANTED and the SAC is DISMISSED.  ECF No. 105.  In light of the dismissal of the SAC, the Court does not address Plaintiff's Ex Parte Application for Temporary Restraining Order.  ECF No. 121.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, April 15, 2022.



Jill A. Otake
United States District Judge

Civil No. 18-00500 JAO-WRP, *Henry v. Castle Med. Ctr.*; ORDER GRANTING DEFENDANT CASTLE MEDICAL CENTER'S MOTION TO DISMISS PLAINTIFF DAVID E. HENRY, M.D.'S [104] SECOND AMENDED COMPLAINT FILED JANUARY 11, 2022