IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID E. HENRY, M.D., | CIVIL NO. 18-00500 JAO-WRP |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S BILL OF COSTS |
| CASTLE MEDICAL CENTER, | |
| Defendant. | |

FINDINGS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
DEFENDANT'S BILL OF COSTS

On April 29, 2022, Defendant Castle Medical Center (Castle) filed a Bill of Costs seeking $5,392.30 in taxable costs. See ECF No. 147. Plaintiff David E. Henry, M.D. filed his objections on May 6, 2022. See ECF No. 148. The Court directed Castle to file a reply, and it did so on May 20, 2022. See ECF Nos. 149, 154.

After careful consideration of the parties' filings, the record in this action, and the relevant legal authority, the Court FINDS AND RECOMMENDS that Castle's Bill of Costs be GRANTED IN PART and DENIED IN PART.[1]

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court. A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and

BACKGROUND

Plaintiff is a Caucasian male who is a board-certified surgeon. See ECF No. 104 ¶ 2. In this action, he alleged that Castle, who had offered him a position as a bariatric surgeon, discriminated and retaliated against him based on his race. See ECF No. 104.

Plaintiff initially filed this action in December 2018. See ECF No. 1. After Castle first moved to dismiss, the District Court stayed the action pending the disposition of the appeal in Henry v. Adventist Health Castle Medical Center, Civil No. 18-00046 JAO-KJM ("Henry I") based on the substantial overlap between the allegations in Henry I and this action and the fact that Plaintiff sought to amend his complaint in Henry I to include certain of the claims presented in this case, and the denial of that request to amend was on appeal.[2] See ECF Nos. 82, 84.

After the Ninth Circuit affirmed in Henry I,[3] and the Supreme Court denied Plaintiff's petition for writ of certiorari, the District Court lifted the stay in

---

Recommendation.

[2] In Henry I, Plaintiff alleged Castle violated Title VII by discriminating and retaliating against him; the District Court granted summary judgment in Castle's favor because it concluded Plaintiff was an independent contractor and therefore not protected under Title VII. See Henry v. Adventist Health Castle Med. Ctr., 363 F. Supp. 3d 1128 (D. Haw. 2019).

[3] See Henry v. Adventist Health Castle Med. Ctr., 970 F.3d 1126 (9th Cir. 2020).

this action. See ECF Nos. 85, 89, 92, 95. The parties stipulated to Plaintiff filing an amended complaint, see ECF Nos. 102, 104, and Castle moved to dismiss Plaintiff's Second Amended Complaint (SAC), see ECF No. 105.

On April 15, 2022, the District Court granted Castle's motion to dismiss Plaintiff's SAC with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). See ECF No. 145 (Order). The District Court first dismissed Counts II (conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3)) and IV (aiding and abetting discrimination and retaliation) with prejudice because Plaintiff had abandoned those claims. See id. at 15-16. Next, the District Court concluded that Counts I (discrimination and retaliation in violation of 42 U.S.C. § 1981) and III (violations of procedural and substantive due process) were precluded based on the final judgment entered in Henry I. See id. at 16-35.[4] Judgment was entered on April 15, 2022. See ECF No. 146. Castle's Bill of Costs followed.

## DISCUSSION

Rule 54(d)(1) states that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Thus, Rule 54(d)

---

[4] Because it dismissed the SAC, the District Court did not address Plaintiff's Ex Parte Application for Temporary Restraining Order, see ECF No. 121, nor the motion for partial summary judgment that Plaintiff had also filed, see ECF No. 107.

3

creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded." Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1079 (9th Cir. 1999).

Plaintiff objects that Castle is not entitled to any costs because it is not a prevailing party or, alternatively, that the Court should exercise its discretion and not award costs based on the circumstances of this case. Plaintiff also raises a handful of objections to the specific costs Castle requests. The Court will first address whether Castle is entitled to costs, and then address whether any deductions are warranted.

### A. Prevailing Party

As stated above, Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party. Plaintiff argues Castle is not a prevailing party here because the District Court dismissed the complaint based on claim preclusion, which amounts to a "technical victory" "on purely procedural grounds." ECF No. 148 at 9-10.

The term "prevailing party" is a "legal term of art" that means "a 'party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598, 603 (2001) (quoting Black's Law Dictionary 1145 (7th ed. 1999)); see also United States v. Milner, 583 F.3d 1174, 1196 (9th Cir. 2009) ("To be a prevailing party, the party must have received an enforceable judgment

4

on the merits or a court-ordered consent decree."); Cadkin v. Loose, 569 F.3d 1142, 1144-45 (9th Cir. 2009) ("prevailing party status turns on whether there has been a material alteration of the legal relationship of the parties") (citation omitted).

Based on this standard, Castle is the prevailing party here—and thus presumptively entitled to costs. Castle's motion to dismiss explicitly sought to dismiss the SAC with prejudice, and the District Court granted that motion. See ECF No. 145 at 15, 36. In its Order, the District Court explicitly dismissed Counts II and IV with prejudice because Plaintiff confirmed he had abandoned those claims. See ECF No. 145 at 16. Counts I and III were dismissed—pursuant to Rule 12(b)(6)—on the basis of claim preclusion, meaning Plaintiff is foreclosed from pursuing those claims in federal court. See ECF No. 145.

Unlike a dismissal on jurisdictional grounds or for improper venue, Castle is no longer subject to liability on any of the claims in the SAC based on the judgment entered in its favor here—meaning there has been a material alteration in the parties' legal relationship. Compare Cadkin, 569 F.3d 1142, 1150 (9th Cir. 2009) ("a defendant is a prevailing party following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court"); with Milner, 583 F.3d at 1196-97 ("although a defendant may no longer have a claim pending against him or her upon dismissal, a dismissal without prejudice does not materially alter the legal relationship of the parties, because the

5

defendant remains subject to the risk of re-filing"). The authority that Plaintiff cites in arguing Castle is not a prevailing party is thus not persuasive here. See, e.g., Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989) (noting, as an example, that success on only an issue "of minor significance" that was never shown to adversely affect plaintiff would be an insignificant technical victory).[5]

For the foregoing reasons, the Court FINDS Castle is a prevailing party and thus presumptively entitled to an award of costs pursuant to Rule 54(d)(1).

### B. Discretionary Denial of Costs

Plaintiff next argues that, notwithstanding the presumption set forth in Rule 54, the Court should exercise its discretion and deny costs here, citing Draper v. Rosario, 836 F.3d 1072 (9th Cir. 2016). But Draper does not support finding that Plaintiff rebutted the presumption in favor of awarding Castle its costs here.

Draper recognized that a district court has discretion under Rule 54(d) to refuse to award costs and, when exercising that discretion, noted that the Ninth Circuit has said that

> appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the

---

[5] Garland relied on two cases, Hewitt v. Helms, 482 U.S. 755 (1987) and Rhodes v. Stewart, 488 U.S. 1 (1988), which addressed mootness and prevailing party status—and so are similarly inapposite here. See, e.g., Rhodes, 488 U.S. at 4.

6

case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. This is not an exhaustive list of good reasons for declining to award costs, but rather a starting point for analysis.

836 F.3d at 1087 (alterations and citations omitted). Based on these factors, the Ninth Circuit in Draper concluded that an award of $3,018.35 in costs against the plaintiff—a prisoner proceeding in forma pauperis—was an abuse of discretion. See id. at 1087-89. In doing so, it emphasized that the plaintiff's case was "important for safeguarding the rights and safety of prisoners," that the plaintiff's evidence was sufficient to survive summary judgment and that the jury deliberated for two days before reaching a defense verdict, and that the plaintiff had "virtually no resources." Id. at 1088-89.

Moreover, while the Ninth Circuit vacated the award of costs to the defendant in Draper, it reiterated that it would be an abuse of discretion to award costs only "in the rare occasion where severe injustice will result from an award of costs." Id. at 1089 (citation omitted). The cases that Draper relied on help demonstrate under what circumstances an award of costs amounts to a severe injustice—often involving a large cost award against a civil rights plaintiff with very limited resources. See id. at 1088 (citing Stanley v. University of Southern California, 178 F.3d 1069, 1080 (9th Cir. 1999) (concluding district court abused its discretion in awarding $46,710.97 in costs to defendant in employment discrimination action because that award could have left the plaintiff indigent and

7

might chill future civil rights litigation); <u>Association of Mexican-American Educators v. State of California</u>, 231 F.3d 572, 591-93 (9th Cir. 2000) (affirming denial of "extraordinarily high" costs of $216,443.67 in an "extraordinarily important" case brought by individuals and nonprofit organizations with limited resources on issues affecting the state's public school system where, although plaintiffs did not prevail, their claims were "not without merit" because defendant did alter certain practices during the pendency of the case)).

This case is distinguishable from <u>Draper</u> and those on which it relied. The Court recognizes that Plaintiff has been unable to secure his preferred surgical employment; however, there is no evidence that Plaintiff has virtually no resources or that the costs awarded here could leave him indigent—such that a modest cost award to Castle, a non-profit hospital, would amount to a severe injustice. While claims alleging discrimination, retaliation, and violation of due process are important, the Court finds that based on the specific circumstances of this case, where Plaintiff's claims were dismissed based on abandonment and preclusion, there is no reason to suspect an award of costs would have a chilling effect in similar cases.[6] In addition, that Plaintiff's claims were dismissed under Rule 12(b)(6), rather than at trial, and without any finding that they were "not without

---

[6] The Court notes that the docket in <u>Henry I</u> does not indicate Castle sought or was awarded any costs in that action, which underscores this point. <u>See generally</u> <u>Henry v. Adventist Health Castle Medical Center</u>, Civil No. 18-00046 JAO-KJM.

merit," further distinguishes this case from Draper and those on which it relied.

Based on this, the Court FINDS that awarding a modest amount of costs to Castle as the prevailing party is appropriate.

### C. Specific Costs Requested

Having found that Castle is entitled to costs as a prevailing party, and that an award of costs in this case would not be unjust, the Court turns to address the $5,392.30 in costs Castle has requested here. See ECF No. 147. The costs that the Court is authorized to tax are enumerated at 28 U.S.C. § 1920:

1. Fees of the clerk and marshal;

2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

3. Fees and disbursements for printing and witnesses;

4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

5. Docket fees under section 1923 of this title;

6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Local Rule 54.1(f) also provides that "[c]osts are taxed in conformity with 28 U.S.C. §§ 1821, 1920-1925, and other applicable statutes[.]" Subsection (f) clarifies certain of those taxable costs, as further discussed below. See LR54.1(f). Each category of requested costs is addressed below, as are

9

Plaintiff's objections.

### 1. Deposition Transcripts

Section 1920(2) permits the taxation of fees for "transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Local Rule 54.1(f)(2) provides that "[t]he cost of a stenographic and/or video original and one copy of any deposition transcript necessarily obtained for use in the case is allowable" even if not introduced in evidence or used at trial "so long as, at the time it was taken, it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery." LR54.1(f)(2).

Castle seeks $5,187.30 in costs related to transcripts for the depositions of: (1) Steven Fowler, M.D.; (2) James Panetta, M.D.; (3) David Henry, M.D.; (4) Alan Cheung, M.D.; (5) Darcy Malaythong, R.N.; and (6) Kathryn Raethel, M.D. See ECF No. 147-4 at 4. Plaintiff objects to the costs associated with all deposition transcripts except for Plaintiff's deposition (which amounted to $ 1,131.26), arguing Castle has offered only "blanket declarations" that are insufficient to demonstrate the transcripts were necessarily obtained for use in this case. See ECF No. 148 at 7-8.

Based on its review of the record in this case, the Court finds Castle's Bill of Costs and counsel's declaration in support of these costs is sufficient to show the transcripts were necessarily obtained and reasonably expected to be used for trial preparation. See ECF No. 147 at 5-6; ECF No. 147-1 ¶¶ 7-8; see also, e.g.,

ECF No. 104 (SAC indicating centrality of allegations involving Dr. Cheung); ECF Nos. 107, 107-1 (Plaintiff's motion for partial summary judgment relying on testimony of Drs. Fowler and Panetta to support contention that Plaintiff was competent and met the standard of care); ECF No. 115 (Plaintiff's letter brief asking for discovery to proceed noting that he sought to prioritize deposing, among others, Dr. Cheung, Dr. Raethel, and Darcy Malaythong); ECF No. 132 (Plaintiff's reply in support of his TRO relying on Dr. Cheung's testimony); ECF No. 132-1 ¶ 3 (Plaintiff's counsel's declaration attached to the reply in support of his TRO referencing upcoming deposition of Malaythong, Castle's Peer Review Specialist); ECF No. 140 (seeking to introduce portions of Dr. Raethel's deposition in support of TRO).

The Court rejects Plaintiff's argument that the transcripts were not necessarily obtained merely because Plaintiff attached some portions of those transcripts as exhibits to certain filings.[7] See ECF No. 148 at 7-8. Nor does the Court find Castle's request for these costs inconsistent with, or disingenuous because of, its prior position that discovery should remain stayed pursuant to the parties' agreement and Castle's pending motion to dismiss. See ECF No. 114. Once the Court concluded that discovery should proceed based on the age of the

---

[7] As Plaintiff himself notes, Castle's invoices for at least two of these deposition transcripts (as to Drs. Fowler and Panetta) are dated in 2019, and thus predate the motion Plaintiff references as containing these attachments, which was filed in 2022. Compare ECF No. 148 at 7-8, with ECF No. 147-5 at 2-3.

11

case and the imminent trial date, see ECF No. 117, Castle proceeded as directed to prepare for that trial date. The fact that Castle did not rely on any transcripts in support of its motion to dismiss, which ultimately resolved the case, is also not a basis to deny these costs here. See LR54.1(f)(2).

Based on the foregoing, the Court FINDS Castle is entitled to $5,187.30 in transcript costs.

### 2. Witness Fees

Castle next requests $160 in witness fees. See ECF No. 147 at 6. Section 1920(3) permits the taxation of costs for fees and disbursements for witnesses. See 28 U.S.C. § 1920(3). "[A] witness in attendance . . . before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by [28 U.S.C. § 1821]." 28 U.S.C. § 1821(a)(1); see also LR54.1(f)(3) ("Per diem, subsistence, and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821."). Section 1821(b) provides that a witness shall be paid $40 per day for each day's attendance. See 28 U.S.C. § 1821(b).

Castle's request for $160 in witness fees is based on $40 for each of the following four witnesses' attendances at depositions: (1) James Panetta, M.D.; (2) Alan Cheung, M.D.; (3) Kathryn Raethel, M.D.; and (4) Darcy Malaythong. See ECF No. 147 at 6.

Plaintiff objects that these costs are not recoverable because the witnesses were not subpoenaed to appear for their depositions. But nothing in the plain language of 28 U.S.C. §§ 1821 or 1920, or the Local Rules, indicates that witness expenses are not reimbursable when a non-party witness testifies voluntarily. See, e.g., 28 U.S.C. § 1821(a)(1) (stating only that a witness in attendance before a person authorized to take his deposition "pursuant to any rule or order of a court of the United States" shall be paid $40 per diem); cf. Kemart Corp. v. Printing Arts Rsch. Lab'ys, Inc., 232 F.2d 897, 901-02, 904 (9th Cir. 1956) (noting that "it is not necessary to actually have had the witness subpoenaed in order to collect mileage for such witness" and allowing witness fees as costs for corporate plaintiff's officers who were not parties to the case); Chi. Coll. of Osteopathic Med. v. George A. Fuller Co., 801 F.2d 908, 910 (7th Cir. 1986) ("Just because he cannot be subpoenaed to testify does not mean that if he testifies voluntarily the travel expenses that he incurs are not reimbursable.").[8]

---

[8] The Court notes that other district courts in the Ninth Circuit explicitly provide that witness fees are reimbursable as costs pursuant to § 1821 — whether the witness is subpoenaed or appears voluntarily. See, e.g., Genuine Enabling Tech. LLC. v. Nintendo Co., 2021 WL 211536, at *1 (W.D. Wash. Jan. 21, 2021) ("In taxing costs, the attendance, travel, and subsistence fees of witnesses, for actual and proper attendance, shall be allowed in accordance with 28 U.S.C. § 1821, whether such attendance was procured by subpoena or was voluntary. LCR 54(d)(3)."); Stevens v. Corelogic, Inc., 2017 WL 106953, at *1 (S.D. Cal. Jan. 11, 2017) ("Pursuant to Civil Local Rule 54.1, a prevailing party is entitled to fees paid to witnesses, including $40 per day as provided in 28 U.S.C. § 1821, even if the witness attends voluntarily and is not under subpoena, and for witness fees for officers and employees of a corporation if they are not parties in

The Court is therefore not persuaded by the non-binding authority that Plaintiff relies on to argue to the contrary—which also relies on language not contained within the current version of § 1821.  See ECF No. 148 at 10 (citing Lillienthal v. S. Cal. Ry. Co., 61 F. 622, 623 (C.C.S.D. Cal. 1894) (finding witnesses who appear voluntarily are not entitled to witness fees based on its interpretation of the phrase "pursuant to law" in the applicable statute to mean "upon service of process, and not voluntarily upon the request of the party without process")).

Plaintiff also objects that Castle has not demonstrated that these witness fees were actually paid.  See ECF No. 148 at 10.  Castle's counsel's declaration submitted in support of the Bill of Costs attests that Castle is seeking costs that were incurred in this case.  See ECF No. 147-1 ¶ 4; see also ECF No. 147-4 (Castle's Form AO 133 that lists $160 in witness fees, wherein counsel attests under penalty of perjury that the foregoing costs were "correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed").  The Court might otherwise find this is sufficient evidence that Castle is entitled to such costs.  See LR54.1(c)

---

their individual capacities. CivLR 54.1b4(a)(2), 54.1b4(c).").  As Castle argues in reply, allowing costs in either scenario makes sense to avoid needless subpoenas.  And practically speaking, the witness is required to dedicate their time to testifying regardless.

(requiring Bill of Costs to be supported by an affidavit "that the costs claimed are correctly stated, were necessarily incurred, and are allowable by law").

However, in its reply, Castle seems to indicate that it did not actually pay these witness fees. See ECF No. 154 at 9 ("CMC has provided specific authority for its $160.00 in claimed witness fees being awardable regardless of whether . . . such fees were actually paid."). But Castle does not cite any authority that says a prevailing party may be reimbursed for witness fees it never actually paid to the witnesses (and where there is no clarification that, e.g., it intends to pay such fees). See ECF No. 147 at 6 (citing, e.g., 28 U.S.C. § 1821(b) (providing that it is the witness who shall be paid the per diem amount)); see also 28 U.S.C. § 1924 (requiring bill of costs to be supported by affidavit that any item of cost or disbursement "has been necessarily *incurred* in the case") (emphasis added);[9] see also Stevens, 2017 WL 106953, at *2 (awarding witness fees for depositions of prevailing defendant's employees where defendant "provided a declaration from its attorney under penalty of perjury that each of these costs was necessarily incurred *and that the witness fees were paid to each of the witnesses*") (emphasis added).

---

[9] In the context of taxing costs under the Equal Access to Justice Act, which limits reimbursement of costs to those the prevailing party "incurred," another district court found the plain meaning of "incur" was: to become liable or subject to as a result of one's actions. See Walsh v. Bowers, 2022 WL 355126, at *2, *4 (D. Haw. Feb. 7, 2022).

Another district court declined to award witness fees as costs where the prevailing party was seeking to recover the per diem amount for the depositions of its employees, but did not allege that it actually paid those witness fees. See Harmon v. United States by & through Bureau of Indian Affs., 2017 WL 6028338, at *1-2 (D. Idaho Dec. 5, 2017) ("Here, it appears neither party actually paid the witness fees the [defendant] seeks to recover as costs.  While [plaintiff] may be obligated to pay the individual witnesses the fees they are entitled to under § 1821, the [defendant] is not entitled to recover those fees as costs."). Based on Castle's indication that it is seeking to recover costs for witness fees that it did not pay out, see ECF No. 154 at 9, the Court FINDS Castle is not entitled to recover the $160 in witness fees requested as costs.

### 3. Other Costs

Finally, Castle seeks $45 for Darcy Malaythong's deposition parking fee.  Pursuant to § 1821(c)(3), "parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses."  28 U.S.C. § 1821(c)(3).  Castle has provided a copy of the parking receipt here.  See ECF No. 147-6.  Plaintiff nonetheless objects to this cost, arguing Malaythong was not required to park where she did (at Castle's counsel's office) and could have shown up at the location of the deposition (Plaintiff's counsel's office) without incurring this expense.  See ECF No. 148 at 9.  As Castle notes in its reply, however, Plaintiff has not offered any evidence or even a sufficient explanation as

to how Ms. Malaythong could have avoided this expense, or that such a daily parking fee was not reasonably necessary. See LR54.1(f)(3) ("Per diem, subsistence, and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821."); cf., e.g., Otay Mesa Prop., L.P. v. United States, 127 Fed. Cl. 146, 150 (2016) (disallowing parking and common carrier costs where witness's hotel was across the street from the location of the trial). The Court therefore FINDS that Castle is entitled to $45 in costs for this parking fee.

Overall, then, as discussed above, the Court FINDS Castle is entitled to $5,232.30 in costs, i.e., deducting only the $160 in witness fees from the total requested for the reasons stated above.

## CONCLUSION

In accordance with the foregoing, the Court FINDS and RECOMMENDS that the District Court GRANT IN PART and DENY IN PART Castle's Bill of Costs and TAX costs against Plaintiff in the amount of $5,232.30.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, JUNE 30, 2022.



Wes Reber Porter
United States Magistrate Judge

**DAVID HENRY, M.D. v. CASTLE MEDICAL CENTER; CIVIL NO. 18-00500 JAO-WRP; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S BILL OF COSTS**